Joe Regueira, Inc. v. Commissioner.
Joe Regueira, Inc. v. Commissioner
Docket No. 27896.
United States Tax Court
1953 Tax Ct. Memo LEXIS 249; 12 T.C.M. (CCH) 532; T.C.M. (RIA) 53172; May 19, 1953
H. H. Baskin, Jr., Esq., and Milton D. Jones, Esq., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has denied petitioner's claim for refund of excess profits tax for the taxable year ended August 31, 1943. The sole issue is whether or not petitioner is entitled to any refund thereof under section 721 of the Internal Revenue Code. Findings of Fact Petitioner is a Florida corporation, engaged in the wholesale liquor business, and has its principal place of business at Tampa, Florida. For the fiscal year ended August 31, 1943, it filed income and excess profits tax returns with the collector of internal revenue for the district of Florida. Petitioner was organized *250 about 1935 by Joe Regueira, who since that time has held all of its outstanding capital stock except qualifying shares. In 1943 petitioner's directors were Regueira, his mother and his secretary. Regueira was also president. When petitioner first started in business, it handled only the products of the Seagrams distillery. About 1938 it ceased to handle Seagrams' products and took on the products of several other distilleries. Petitioner started on a small scale, and in the early years of its existence it ploughed its earnings back into the business in an effort to improve its financial condition. It followed the policy of holding its administrative expenses to as low a level as possible. In 1935 Regueira was paid a salary of $2,400 a year. For the year 1943 his salary was $15,000 a year. A resolution adopted by petitioner's board of directors on August 21, 1943, reads as follows: "RESOLVED, that pursuant to the resolution of the special meeting held at August 31, 1942 in fixing the remuneration of its President that the services of Mr. Regueira for the fiscal year ended at August 31, 1943 are considered worth to this Corporation $25,000.00, that it is recognized that the salary *251 of $15,000.00 being paid him for the year's services is grossly inadequate under the circumstances; and that it is the sense of this meeting that the inadequacy in remuneration made necessary by the exigencies of the situation be not lost sight of, and that this shall be considered a promise to compensate Mr. Regueira by an overpayment in some future year or years; more specifically that such compensating overpayment of remuneration shall be made in equal amounts to the said officer during the fiscal years ending August 31, 1945 and August 31, 1946 if at that time the anti-inflation act has been repealed, or in any event the first two years following the repeal of such act, provided that it is not the sense of this resolution to create a legally enforceable claim in favor of the said officer but to create a moral obligation only, and further that if the passing of this resolution shall be considered in itself a violation of either the letter or the principles of the anti-inflation act it shall be null and void and considered rescinded thenceforth." At a meeting held on August 6, 1946, petitioner's directors authorized the payment of $10,000 to Regueira as additional or deferred salary *252 for the fiscal year ended August 31, 1943. Petitioner's books of account show that this item was actually paid to Regueira on September 30, 1946. Opinion The contention of the petitioner, as we understand it, is fairly well stated in its allegation in its petition, of "The facts upon which the Petitioner relies," as follows: "* * * the facts specifically indicate that the excess profits tax return filed by the Petitioner for its fiscal year ended August 31, 1943 did in fact include certain abnormal income in that the return was not burdened by a proper allowance for compensation payment to the corporation's President because the provision for such adequate compensation was estopped to the Petitioner by virtue of the requisite of the Wage Stabilization Act, and that accordingly the Petitioner was subjected to an excessive amount of excess profits tax." The claim for refund was not offered in evidence, but from an exhibit attached to the petition, it would appear that the claim was based on section 721 (a) (2) (D) of the Internal Revenue Code. Under section 721 of the Code, [1] a taxpayer which in an excess profits tax taxable year has received abnormal *253 income which is attributable to any previous or future taxable year or years, is entitled, under subsection (c) (1), to have its tax for the taxable year computed by excluding from gross income that portion of the net abnormal income which is attributable to any other taxable year. For the purpose of such computation, however, abnormal income is defined in subsection (a) (1) to mean (1) income of any class includible in the gross income of the taxpayer for the taxable year, if it is abnormal for the taxpayer to derive income of such class, or (2) income for the taxable year which is normal as to class but which is in excess of 125 per cent of the average amount of the gross income of the same class for the four previous taxable years. *254 Aside from any defects which may have existed in the petitioner's claim for relief, and aside from the fact that apparently it was bottomed on claimed applicability of section 721 (a) (2) (D), which applicability has now been abandoned by the petitioner in its brief, the short answer to the present case is, there is no showing in the record that petitioner in the excess profits tax taxable year herein had any abnormal income within the meaning of section 721. It did not prove, and in fact does not claim, that its income for the taxable year 1943 was abnormal as to amount, and not only is there no showing that any of its income for the taxable year was abnormal as to class, but there is every indication that its income for the taxable year was wholly normal as to class, namely, the profits which would normally be realized from the conduct of a wholesale liquor business, the business in which it had been engaged from its inception. Decision will be entered for the respondent. Footnotes
1. SEC. 721. ABNORMALITIES IN INCOME IN TAXABLE PERIOD. (a) Definitions. - For the purposes of this section - (1) Abnormal Income. - The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence. (2) Separate Classes of Income. - Each of the following subparagraphs shall be held to describe a separate class of income: (A) Income arising out of a claim, award, judgment, or decree, or interest on any of the foregoing; or * * *
(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing. extending over a period of more than 12 months; or (D) Income includible in gross income for the taxable year rather than for a different taxable year by reason of a change in the taxpayer's accounting period or method of accounting: or (E) In the case of a lessor of real property, income included in gross income for the taxable year by reason of the termination of the lease; or (F) Income consisting of dividends on stock of foreign corporations, except foreign personal holding companies. All the income which is classifiable in more than one of such subparagraphs shall be classified under the one which the taxpayer irrevocably elects. The classification of income of any class not described in subparagraphs (A) to (F), inclusive, shall be subject to regulations prescribed by the Commissioner with the approval of the Secretary. (3) Net Abnormal Income. - The term "net abnormal income" means the amount of the abnormal income less, under regulations prescribed by the Commissioner with the approval of the Secretary, (A) 125 per centum of the average amount of the gross income of the same class determined under paragraph (1), and (B) an amount which bears the same ratio to the amount of any direct costs or expenses, deductible in determining the normal-tax net income of the taxable year, through the expenditure of which such abnormal income was in whole or in part derived as the excess of the amount of such abnormal income over 125 per centum of such average amount bears to the amount of such abnormal income. (b) Amount Attributable to Other Years. - The amount of net abnormal income that is attributable to any previous or future taxable year or years shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary. * * * (c) Computation of Tax for Current Taxable Year. - The tax under thi subchapter for the taxable year, in which the whole of such abnormal income would without regard to this section be includible, shall not exceed the sum of: (1) The tax under this subchapter for such taxable year computed without the inclusion in gross income of the portion of the net abnormal income which is attributable to any other taxable year, * * *↩